UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 2:19-CR-196 |
| v. | ) | JUDGE GREER |
| | ) | |
| JOSHUA CAINE DAVIS | ) | |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Joshua Caine Davis, and the defendant's attorney, Mike Whalen, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

    a) Count One, that is, conspiracy to distribute fifty grams or more of methamphetamine, its salts, its isomers, and salts of its isomers, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).

The punishment for this offense is as follows: A minimum mandatory 10 years up to life imprisonment, a fine of up to $10,000,000.00, a minimum of five years up to life on supervised release, and a $100.00 mandatory assessment fee.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of

the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant was a member of a drug trafficking organization during the time frame set forth in the indictment.

On September 20, 2017, at approximately 2:04 AM, Defendant was arrested with Adam Bear, Jordan Davis, and Joseph Davis by Kingsport Police Officers for possession of approximately six (6) ounces of methamphetamine while at Wal-Mart on W. Stone Drive in Kingsport, TN. Baggies, digital scales and $33,169.00 were also located in the vehicle. Several handguns were also located in both the Ford Expedition that belonged to Defendant and the BMW that belonged to Bear. Later that evening, Bear was interviewed by agents. Bear stated he was introduced to Defendant by Eddie "Red" Spears. Bear stated that he had purchased methamphetamine from Defendant on four occasions. The first purchase was one ounce, the second was two and a half ounces, and the third was three ounces. Bear stated the fourth purchase was around $2,000.00 worth of methamphetamine.

Bear gave consent for agents to search his cell phone and download the contents. The phone contained text messages between Bear and Defendant. On September 19, 2017, at approximately 11:26 PM, Bear sent a text to Defendant stating "Bro I've been sitting here for a long while I got everything ready plz hurry". On September 19, 2017, at approximately 11:35 PM, Bear sent another text message to Defendant stating "Bro plz don't leave me sitting here long. Got 2,400 for u." The messages were sent approximately two and a half hours prior to Kingsport Police Officers locating Bear and Defendant at Wal-Mart with the money and methamphetamine.

2

On May 3, 2018, Defendant was stopped by the South Carolina Highway Patrol on I-26 eastbound near mile marker 5. Homeland Security Investigations was contacted to respond. HSI conducted an interview of Defendant who was found in possession of $24,352.00 and stated he was on his way to meet with a subject named "Red" to purchase four pounds of methamphetamine. Based on the information provided by Defendant, agents were able to arrest his source for the methamphetamine, Cornelius "Red" Mayberry, in possession of the methamphetamine that Defendant had intended to purchase.

On August 3, 2018, agents interviewed Ronnie Stafford. Stafford stated he was introduced to Defendant by Eddie Spears. Stafford stated that from July 2017 to August 2017, Defendant supplied him with one to two ounces of methamphetamine every two days. Stafford said he paid $800.00 per ounce. Stafford stated that after Defendant's 2017 arrest, he continued being supplied by Defendant but at a smaller rate of a half-ounce to one ounce of methamphetamine every couple of days. Stafford stated this continued until his own arrest in December 2017.

On December 14, 2018, a search warrant was obtained in the Eastern District of Tennessee for text message content from the cellular phone utilized by Victor Ray. As a result, multiple text messages between Ray and Defendant were recovered. On October 26, 2018, in a series of text messages, Defendant told Victor Ray that he had fifteen ounces of methamphetamine that he was going to sell for $500.00 an ounce, and an additional ten ounces of methamphetamine that he was going to "stretch out" and sell for $650.00 an ounce to make money due to a "Slow down." Defendant told Ray that he would be picking the methamphetamine up in about an hour. Ray then told Defendant that he would buy all the ounces Defendant had if he would deal with him. Defendant told Ray that he had a customer that would buy four ounces for $650.00 an ounce, and

3

that he had sixteen ounces left he would sell to Ray for $500.00 an ounce if he wanted them. Defendant and Ray then discussed a location to meet to make the exchange.

On October 29, 2018, Ray sent a text to Defendant to ask if he had any methamphetamine. Defendant sent a text back, telling Ray that he would be making a trip to pick up more the following day. Ray asked Defendant if he could get three pounds of methamphetamine for $15,000. Defendant sent a text saying that he would make the trip and that the source should sell the three pounds for $15,000. Defendant then sent a text to Ray, saying that he could ride with him. Defendant said he needed a ride down because he was picking up a truck.

On November 2, 2018, Ray sent a text to Defendant, asking if he acquired more methamphetamine. Defendant responded to Ray and explained he had not because the mother of the source in Georgia passed away and the source was in Mexico City to attend the funeral. Defendant said that he could call another source of methamphetamine in Georgia that David Garber used to go to, and that the source was located five miles on the other side of Interstate 85 from where they had been going. Defendant then asked if Connie Terry had methamphetamine and Ray told him that her source had been arrested. Defendant then contacted Ray and told him that he was going to get methamphetamine from another person at a rate of $6,500.00 a pound. Defendant told Ray to let him know prior to 8:00 PM, and that he was purchasing two pounds of methamphetamine himself. Ray told Defendant that he wanted two pounds of meth as well and wanted to know when Defendant would return with the meth. Defendant texted Ray that he had the meth and he was returning from Greenville with it. Defendant told Ray that the supplier sold him the meth for $6,250 a pound because they bought four pounds. Defendant then told Ray to meet him at a location off Eastern Star Road, and that he was not coming in to Sullivan County anymore.

On November 21, 2018, Kirstin Mulkey was interviewed at the Kingsport Police Department. Mulkey stated that her boyfriend, Victor Ray, was being supplied methamphetamine by Defendant. She stated that Defendant had been Ray's main source of methamphetamine but that Ray had also gone to other sources. Mulkey said that Defendant also sold methamphetamine to Harvey Napier and Coy McMurray.

On December 22, 2018, Victor Ray was arrested in Asheville, NC in possession of approximately one and a half pounds of methamphetamine and firearms. Agents interviewed Ray on two occasions. Ray stated that he met Defendant through Harvey Napier. He stated that he would provide Napier with money, Napier would then go to Defendant and return with the methamphetamine he had purchased. Ray stated that he eventually met Defendant in 2018 and began to buy from him directly. Ray stated that he would typically purchase one (1) pound of methamphetamine from Defendant. Ray stated that the most he methamphetamine he bought from Defendant at one time was two pounds. He stated that the last time he purchased methamphetamine from Defendant was approximately two weeks prior to his arrest, when he purchased one pound.

On March 6, 2019, a search warrant was obtained in Sullivan County, Tennessee for two cellular phones belonging to Dustin Barnette. As a result, agents obtained text messages and Facebook messages found on the cellular phone. On January 4, 2019, Barnette texted Defendant through Facebook messenger, and asked if Defendant was coming to him. Defendant responded affirmatively. Barnette indicated that he needed an ounce of methamphetamine. Barnette asked Defendant to meet him at the Zoomerz gas station near Sullivan Gardens Parkway so he could buy the methamphetamine from Defendant.

On January 7, 2019 an agent interviewed Kirstin Mulkey. Mulkey said that since Victor Ray's arrest in Asheville, NC, Defendant was supplying Dustin Barnette, Alyssa Blevins, Adam

5

Bear, and Harvey Napier with methamphetamine. Mulkey provided an address off Eastern Star Road, and stated that Larry Hutchins had her drive him to the location to drop off money to purchase methamphetamine from Defendant.

On January 30, 2019, a search warrant was obtained in the Eastern District of Tennessee for text message content from a cellular phone utilized by Defendant. In response to the execution of this search warrant on agents received text messages stored in the account from January 19, 2019, to January 30, 2019. On January 27, 2019, Richard Adams texted Defendant, requesting to meet him to obtain methamphetamine. Adams requested a half-ounce of methamphetamine. Defendant told Adams that he would send Adam Bear, who was nearby to take care of him. Defendant and Adams messaged each other confirming the purchase was for $300 worth of methamphetamine.

On January 30, 2019, Adam Bear texted Defendant and asked him to answer the phone. After a phone conversation between the two, Defendant sent a text message, telling Bear to make sure his money was correct and to meet him at a church.

On February 15, 2019, agents interviewed a confidential source (CS) at the Scott County Sheriff's Office. CS said that David Garber was being supplied methamphetamine by Defendant. CS said that she had witnessed Garber meeting defendant at a garage on Pembroke Street to obtain methamphetamine.

On February 26, 2019, agents interviewed Alfonso Ramacus at the Kingsport Police Department. Ramacus stated that he was good friends with David Garber, and that Garber was being supplied methamphetamine by Defendant. Ramacus stated that he had seen Defendant at Garber's residence, 129 Ward Place. Ramacus said that Defendant was traveling to Atlanta, Georgia to pick up methamphetamine, and that Garber's neighbor had made a trip to Atlanta with Defendant.

On February 26, 2019, agents interviewed Harvey Napier. Napier stated that the methamphetamine he was arrested with on December 5, 2018 was obtained from Defendant. Napier said that Defendant used to supply Ronnie Stafford with methamphetamine, and that the first time he met Defendant was in the Sullivan County Jail. Napier stated that he purchased one ounce of methamphetamine from Defendant twice a week from September 2018, until his arrest on December 5, 2018. Napier also said that he drove Defendant to Atlanta, Georgia on two occasions to pick up methamphetamine, and once to Texas. Napier claimed that on one trip, Defendant purchased two-hundred pounds of methamphetamine and brought it back to his house on Reservoir Road. Napier said that Defendant was supplying the following individuals with methamphetamine: Travis Reed, Adam Bear, Adam Burke, Dustin Barnette, Connie Terry, Victor Ray, Andrew Adams, Coy McMurray, and Larry Hawkins.

On March 1, 2019, agents interviewed Mark Adam Burke at the Scott County Court House. Burke said that he had personally purchased between one-quarter to one-half pound of methamphetamine from Defendant on four to six occasions. Burke said he met Defendant to purchase methamphetamine at a gas station, Victor Ray's house, and another house. Burke said that Defendant drove a white truck when he would meet him.

On March 4, 2019, agents interviewed Alyssa Blevins, stated that she was dating Dustin Barnette, and that he and Adam Bear were being supplied methamphetamine by Defendant. Blevins said that approximately two weeks prior to the interview, she purchased one to one and one-half ounces of methamphetamine from Defendant at the Highway Boutique on Lynn Garden Drive. Blevins said that Defendant arrived to meet her in a white truck.

On April 2, 2019, an agent interviewed Steven Eisenmenger, aka "Curly," at the Sullivan County Jail. Eisenmenger stated that Defendant was traveling to Norcross, Georgia to obtain

7

methamphetamine from Javier Mendez, to bring back to Tennessee to sell. Eisenmenger also said that Defendant had been supplied by "Red" in South Carolina, and a source in Brownsville, Texas, that he met in prison. Eisenmenger said that he saw Defendant with approximately ten kilograms of methamphetamine a week prior to him being arrested in South Carolina. Eisenmenger said that he saw Defendant with approximately fifty pounds of methamphetamine a few months prior to the interview, and that he wanted Eisenmenger to sell it for him. Eisenmenger said that Jason Spears sold methamphetamine to and for Defendant. He also stated that Defendant supplied James Curtis McDavid, Adam Bear, Harvey Napier, and others with methamphetamine. Eisenmenger said that he and Lewis Hickman sold methamphetamine for Defendant, and would take money back to his residence on Reservoir Road. Eisenmenger said that Defendant kept money and meth in a safe in his basement.

On April 3, 2019, an agent interviewed Terry Dishner with his attorney. Dishner said that he went to James Curtis McDavid's house to pick up five ounces of methamphetamine. Dishner said he went there to purchase from Dustin Barnette, but that Barnette left and McDavid went outside and obtained the five ounces of methamphetamine from Defendant. Dishner said that Defendant was in a big white truck. Dishner said that Holli Hensley arranged a meeting between him, Barnette, and McDavid to discuss selling methamphetamine for Defendant.

On April 15, 2019, agents interviewed James Powell at the Hawkins County Sheriff's Office. Powell stated that he had known Defendant for approximately fifteen years. Powell said that, approximately six months prior to the interview, he purchased a quarter ounce of methamphetamine from Defendant. Powell stated that Defendant supplied methamphetamine to his friend, Richard Adams.

8

On April 26, 2019, a detective spoke with a CS. The CS stated that he had witnessed Defendant with multiple pounds of methamphetamine on numerous occasions over a span of two years. CS stated that he had purchased methamphetamine from Defendant while at 2214 Diana Avenue, Kingsport, TN.

On December 12, 2019, Defendant was arrested by federal agents at his residence. Agents also executed a search warrant at the residence. When agents arrived, Defendant attempted to flush methamphetamine down the toilet. Methamphetamine was found dissolving in the toilet and loose on the ground around the toilet. Agents were able to recover 9.02 grams of methamphetamine and seized multiple firearms in multiple locations in the residence. After his arrest, Defendant agreed to speak to agents, and told them he could arrange to purchase 100 kilograms of methamphetamine from his sources. Defendant said that he was obtaining methamphetamine in Norcross, Georgia and that he never picked up more than 50 kilograms at a time. Defendant admitted to flushing methamphetamine when agents arrived at his residence.

On January 22, 2020, agents interviewed Tesla Robinson. Robinson indicated that Defendant supplied Adam Bear with methamphetamine. Robinson was with Bear when he did business with Defendant at the IHOP restaurant. Robinson also went to Defendant's residence with Bear to acquire methamphetamine.

Defendant admits that he conspired with at least one other person to distribute methamphetamine as charged in the indictment, and that he is conservatively responsible for the distribution of at least 1.5 kilograms but less than 4.5 kilograms of methamphetamine (actual). The parties further agree, pursuant to Rule 11(c)(1)(C), that U.S.S.G. § 3B1.1 should not be applied in the calculation of the defendant's advisory guidelines sentencing range.

5. The defendant is pleading guilty because the defendant is in fact guilty.

9

The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a)     the right to plead not guilty;

    b)     the right to a speedy and public trial by jury;

    c)     the right to assistance of counsel at trial;

    d)     the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e)     the right to confront and cross-examine witnesses against the defendant;

    f)     the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g)     the right not to testify and to have that choice not used against the defendant.

6.     The parties agree that the appropriate disposition of this case would be the following as to each count:

    a)     The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b)     The Court will impose special assessment fees as required by law; and

    c)     The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office

and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The

11

defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

    b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this

12

Case 2:19-cr-00196-JRG-CRW   Document 998   Filed 06/01/21   Page 12 of 15   PageID #: 7124

agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any

13

court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

14

6.1.2021
Date

By: _____
J. GREGORY BOWMAN
Assistant United States Attorney

5/28/21
Date

_____
JOSHUA CAINE DAVIS
Defendant

5/28/21
Date

_____
MIKE WHALEN
Attorney for the Defendant

15